```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

DALE HENNESSEY BEAUMONT,        )
                                )
          Plaintiff,            )
                                )
v.                              )   Case No. CIV-19-181-KEW
                                )
COMMISSIONER OF SOCIAL          )
SECURITY ADMINISTRATION,        )
                                )
          Defendant.            )
```

**OPINION AND ORDER**

Plaintiff Dale Hennessey Beaumont (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner=s decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 49 years old at the time of the ALJ's decision. Claimant completed his high school education and some vocational-

technical training. Claimant has worked in the past as a dishwasher. Claimant alleges an inability to work beginning September 2, 2014 due to limitations resulting from seizure disorder, left leg problems, anxiety, and depression.

## Procedural History

On December 24, 2015, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. ' 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 7, 2017, Administrative Law Judge ("ALJ") Jennie L. McLean conducted a hearing in Oklahoma City, Oklahoma. On October 4, 2017, the ALJ entered an unfavorable decision. On April 5, 2019, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

4

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to properly consider, evaluate, and weigh the medical evidence and opinions; and (2) reaching an RFC and step five determination not supported by substantial evidence.

**Consideration of Medical Opinion Evidence**

In her decision, the ALJ determined Claimant suffered from the severe impairments of seizure disorder, left leg disorder, anxiety, and depression.  (Tr. 17).  The ALJ concluded Claimant could perform light work. In so doing, she found Claimant could lift/carry up to 20 pounds occasionally and ten pounds frequently, could stand and walk up to four hours in an eight hour workday, and could sit up to six hours in an eight hour workday.  Claimant could occasionally kneel, crouch, crawl, stoop, and climb ramps and stairs but should never climb ladders, ropes, or scaffolds. Claimant should avoid hazards such as unprotected heights, moving machinery, and commercial driving.  Claimant was able to learn, understand, remember, and perform simple and some complex tasks without routine supervision, interact appropriately with supervisors and co-workers for incidental work purposes, and adapt to work situations.  The ALJ determined, however, that Claimant

5

should have no public contact and should avoid customer service work. (Tr. 19).

After consulting with a vocational expert, the ALJ concluded Claimant was capable of performing the representative jobs of polisher, surveillance system monitor, and final assembler. (Tr. 25). As a result, the ALJ concluded Claimant was not under a disability since December 24, 2015 through the date of the application. Id.

Claimant contends the ALJ erred in her evaluation of the opinion of Kristin Bomboy, APRN. Ms. Bomboy completed two mental capacity source statements on Claimant. The first dated September 27, 2016 shows Claimant was markedly limited in the areas of the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to work in coordination with or in proximity to others without being distracted by them, the ability to interact appropriately with the general public, and the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 496-97). Ms. Bomboy determined Claimant was extremely limited in the areas of the ability to complete a normal workday without interruptions from psychologically based symptoms, the ability to complete a

6

normal workweek without interruptions form psychologically based symptoms, the ability to perform at a consistent pace with a standard number and length of rest periods, and the ability to travel in unfamiliar places or use public transportation. (Tr. 497-98). Ms. Bomboy cites to MDD, GAD and PTSD as well as seizures, blindness, and HTD as the basis for Claimant's restrictions. (Tr. 496). Indeed, the Court should note that Ms. Bomboy even states that Claimant was legally blind and that his driver's license was revoked by the State of Oklahoma. (Tr. 498). This appears to not be factually correct as Claimant testified that he had a driver's license without restrictions and the ALJ reviewed the license at the hearing. (Tr. 40).

On March 6, 2017, Ms. Bomboy completed a second source statement on Claimant. She found Claimant was moderately limited in the areas she previously found were markedly or extremely limited and included an opinion that Claimant would be absent from work "4+" days in an average month, stating "pt. struggles with depression and physical limitations." (Tr. 570-72). Ms. Bomboy maintains that Claimant is extremely limited in the ability to travel in unfamiliar places or use public transportation because he was legally blind. (Tr. 572).

The ALJ gave Ms. Bomboy's opinion "little weight" as being inconsistent with the medical evidence, which she contends showed no more than moderate limitations, citing to the medical treatment records from Mental Health Services of Southern Oklahoma as well as the consultative reports of Dr. Mary Marguerite Langille-Hoppe, Dr. Taimur Paracha, and Dr. James Scott.  (Tr. 23, 446-50, 451-58, 460-63, 468-95, 507-68, 573-620).

The ALJ noted that Ms. Bomboy, as an APRN, is not an acceptable medical source but rather is characterized under the regulations as an "other source".  This conclusion is consistent with the applicable regulations.  *See* 20 C.F.R. §§ 404.1502, 404.1513(a).  "Other source" information, however, is useful for other purposes.  "Information from [ ] 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  Soc. Sec. R. 06-03p.

Earlier in the decision, the ALJ noted that Ms. Bomboy's notes indicated Claimant had normal appearance, speech, mood, affect, no

8

delusions or hallucinations, normal attitude, fair insight and judgment, normal thought processes, normal cognition, and normal concentration and memory. (Tr. 481, 484, 487, 490, 494, 534, 536, 539, 541, 543, 545, 552, 598). Dr. Langille-Hoppe to which the ALJ refers concluded, after administering testing, that Claimant's scores were suggestive of mild neurocognitive dysfunction and suggested a neuropsychologist follow up for diagnostic clarification. He showed no problems with working or delayed memory. (Tr. 447). Dr. Scott found Claimant to have normal thought content and processes, was oriented to person, place, time, and situation and provided appropriate responses for delayed memory. (Tr. 461).

Social Security Ruling 06-03p describes the process by which an ALJ should consider opinions from "other sources," including medical sources who are not "acceptable medical sources" and "non-medical sources." *See* Social Security Ruling 06-03p, 2006 WL 2329939. That ruling explains that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." Id. at *6; Keyes-

9

Zachary v. Astrue, 695 F.3d 1156, 1164 (10th Cir. 2012). In this case, the ALJ provided an adequate basis for the reduced weight given to Ms. Bomboy's opinions by citing to contradictory medical records and opinions.

Claimant next makes generalized statements that the findings of the consultative examiners were not fully discussed by the ALJ, including findings that he was diagnosed with various conditions such as antisocial personality disorder. The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's

condition). Claimant does not cite to any other medical source statements on Claimant's functional work abilities. The ALJ was not required to cite to every piece of evidence in her decision. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ properly considered the evidence in the case and the opinions in the record which pertained to Claimant's functional abilities.

### RFC and Step Five Determinations

Claimant contends the ALJ failed to include all of his exertional and non-exertional limitations in the hypothetical questioning of the vocational expert. Claimant first indicates that the ALJ stated in the RFC that he could work "without routine supervision" while in her hypothetical questioning of the vocational expert, she included a requirement that Claimant work "with routine supervision." (Tr. 19, 47). Defendant attributes this inconsistency to a scrivener's error in the written decision and contends the error is harmless because the more restrictive RFC was provided to the vocational expert whose testimony was relief upon in finding representative jobs Claimant could perform. While the error in the written decision is regrettable, it is clear that the vocational expert's testimony was based upon the correct RFC and that testimony formed the basis for the ALJ's ultimate

conclusion at step five.  As a result, the error in the written RFC is considered harmless.

Claimant next argues that the ALJ failed to consider all of his impairments in reaching the RFC which he contends would have eliminated him from competitive work.  While Claimant states he suffered from a left shoulder impairment based upon a finding by a consultative physician of reduced range of motion, the record does not indicate he received any treatment for the condition, did not claim any such limitation in these proceedings, and has not been diagnosed with any such condition.  Indeed, the treatment record indicates normal range of motion.  (Tr. 501).

Defendant contends that Claimant may perform at least one job identified by the vocational expert and incorporated by the ALJ in her decision – that of final assembler (*Dictionary of Occupational Titles*, 713.687-018).  Claimant challenges his ability to perform this occupation on the basis that it requires frequent reaching and he has a left shoulder impairment.  As stated, any restrictions based upon this upper extremity impairment is not supported by the medical record.  He also claims that the job requires pushing and pulling with the lower extremities where he also has an impairment.  No such requirements is found for this job in the *DOT*.

12

Identification of any jobs which Claimant could perform under the RFC satisfies the step five requirements.  See Nunn v. Apfel, 149 F.3d 1191, 1998 WL 321189, *2 (10th Cir. 1998)(Even assuming that claimant's objections to some of the jobs identified by the vocational expert are well taken, if claimant can perform some of the jobs identified, the ALJ can rely on those jobs to find claimant not disabled).  The ALJ's identification of the final assembler job is sufficient to satisfy the required analysis at step five.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE